Priority Send

FILED
CLERK US DISTRICT COURT
JUL 10 2002
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION / BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN C. WILLY, JR.,<br><br>          Defendant. | Case No. EDCV 01-00979-VAP(SGLx)<br><br>**[Motion filed on May 3, 2002.]**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Securities and Exchange Commission's ("Plaintiff") Motion for Summary Judgment came before this Court for hearing on June 28, 2002. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by Plaintiff at the hearing, the Court GRANTS the Motion.[1]

//

ENTER ON ICMS
JUL 11 2002

---

[1] Defendant did not appear at the hearing. Defendant filed a Notice of Filing of Bankruptcy Petition and of Automatic Stay just prior to the June 28, 2002 hearing. Plaintiff's Motion is not stayed, however, for the reasons stated in Part IV infra.

# I. BACKGROUND

In 1999, Defendant John Willy ("Willy") offered and sold more than $4.5 million of unregistered securities to two investor groups on behalf of Temperance Investment Ltd. ("Temperance"), a Gibralter company. [Plaintiff Securities Exchange Commission's Motion ("Pl.'s Mot.") at 1.] Defendant Willy, a Temperance director, represented to the investors that Temperance would place investor monies in a "high yield investment program" earning profits of 100% per month; the purported investment program did not exist, however. [Id.] Instead, investor monies were transferred to a series of bank and brokerage accounts managed and controlled by Defendant Willy for his personal use. [Id.]

Defendant Willy repaid one investor group, but has not repaid the other; $2,095,000 remains outstanding. [Id.] Plaintiff Securities Exchange Commission seeks: 1) entry of a permanent injunction prohibiting further violations of the securities registration provisions of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) & 77e(c), the antifraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. §77q(a), Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §240.10b-5; 2) disgorgement of Defendant Willy's ill-
//
//

gotten gains in the amount of $2,095,000; 3) prejudgment interest in the amount $308,634.35; and 4) third tier civil penalties in the amount of $2,095,00.

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has the burden at trial, "that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331. The

burden then shifts to the non-moving party "and requires that party ... to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial...." Id.; Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(e).

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F. 2d 1132, 1135 (9th Cir. 1991); T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. DISCUSSION

Plaintiff asserts "the overwhelming uncontroverted evidence demonstrates that [Defendant Willy] engaged in the fraudulent sale of unregistered securities in violation of the antifraud and registration provisions of the Securities Act and the Exchange Act." [Pl.'s Mot. at 2.] Defendant Willy argues he was a Temperance representative with no authority and that any "violations were omissions of Temperance Investments." [Defendant's Opposition ("Def.'s Opp'n") at 9.] Defendant Willy also

//

//

argues he had "a good faith belief in the authenticity of the programs offered by Temperance." [Id.] The Court is not persuaded by Defendant Willy's arguments.

Defendant Willy offered and sold unregistered securities in violation of 15 U.S.C. §§ 77e(a) & 77e(c).[2] Plaintiff has shown that 1) no registration statement was in effect or filed with the Commission as to the securities, 2) Defendant Willy offered to sell and sold the securities,[3] and 3) interstate transportation or communication or the mails were used in connection with the sale and offer of sale. SEC v. Interlink Data Network of Los Angeles, Inc., 1993 WL 603274, at *8 (C.D. Cal. Nov. 15, 1993); (citing SEC v. Continental Tobacco Co. of S.C., 463 F.2d 137, 155 (5th Cir. 1972). Moreover, Defendant Willy himself admits that there "may

//
//

---

[2] Sections 77e(a) & 77e(c) prohibit the offer or sale of securities in interstate commerce, unless the securities have been registered with the Commission or are exempt from registration. 15 U.S.C. §§ 77e(a) & 77e(c).

[3] The investments here were securities in the form of investment contracts. "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise." SEC v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946); SEC v. R.G. Reynolds Enterprises, Inc., 952 F.2d 1125, 1130 (9th Cir. 1991).

have been violations of the registration provisions...." [Def.'s Opp'n at 9.] Plaintiff thus has established a violation of Section 5.[4]

Defendant Willy does not argue that a violation did not occur, but rather that he was an innocent Temperance representative and that he was "as much a victim of the misrepresentations as are others." [Id. at 10.] The Court is not persuaded by Defendant Willy's attempt to avoid responsibility.

Section 5 of the Securities Act imposes liability on persons who play a substantial role in the offer or sale of unregistered securities. See SEC v. Murphy, 626 F.2d 633, 652 (9th Cir. 1980).[5] Similar to the Defendant in Murphy, Defendant Willy engaged in numerous activities demonstrating participation in the violation. Defendant Willy "brought the Investment Program to the attention of

---

[4] The uncontroverted facts establish all three elements. [See Plaintiff's Statement of Uncontroverted Facts at 2-9.] Defendant's attempt to controvert the facts by asserting he was acting on Temperance's behalf is unavailing. See Defendant's Opposition to Plaintiff's Motion for Summary Judgment/Opposition to Alleged Uncontroverted Facts at 2-4.]

[5] The Murphy Court held: "[t]he conclusion that Murphy engaged in steps necessary to the distribution -- [of unregistered securites] -- is inescapable. He devised the corporate financing scheme for Intertie, without which there would have been no limited partnerships. He prepared and reviewed offering memoranda; he met personally with broker-dealers, investors and their representatives; and he spoke at broker-dealer sales seminars." Id.

[Superior, Inc. ("Superior")] and [Amberhill LLC ("Amberhill")], met personally with their principals, directly solicited their investments, executed the Funding Participation Agreement on behalf of Temperance, ... provided instructions for the wiring of Superior's and Amberhill's investments," and transferred Superior's and Amberhill's funds to a variety of different accounts controlled by Defendant Willy, including his personal account. [Pl.'s Mot. at 6, 8, 10.] Thus, it is clear Defendant Willy played a substantial role in the sale of unregistered securities.

Defendant Willy also offered and sold investments in a nonexistent investment program and then misappropriated the money in violation of 15 U.S.C. § 77q(a) (Section 17(a) of the Securities Act), 15 U.S.C. § 78j(b) (Section 10(b) of the Exchange Act), and 17 C.F.R. § 240.10b-5 (Rule 10b-5). 15 U.S.C. § 77q(a) provides:

> It shall be unlawful for any person in the offer or sale of any securities ... by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud, or

   (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.[6]

Defendant Willy defrauded the investors and obtained money by making numerous misrepresentations and omissions in the offer and sale of the securities at issue, including that:

  1) Superior's and Amberhill's money would be placed into an investment program;

---

[6] Rule 10b-5 is similarly worded except that it prohibits fraudulent conduct "in connection with the purchase or sale of any security" while Section 17(a) prohibits the conduct in the "offer or sale" of securities. See 17 C.F.R. § 240.10b-5; 15 U.S.C. § 77q(a).

15 U.S.C. § 78j(b) also is similarly worded; it prohibits "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

    2)    the investors' money would not be commingled with other investors' money;

    3)    the investors' money would not leave the account established at National Westminster Bank; and

    4)    the investment program would earn profits of 100% per month and that the investors would receive 90% of those profits.

Moreover, Defendant Willy acted with scienter, which is required for violations of Section 10(b) and Rule 10b-5. Scienter is defined as a mental state embracing intent to deceive, manipulate or defraud.[7] Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976) (intent to defraud, reckless disregard for truth, and knowing use of some practice to defraud sufficient for scienter).

    It is undisputed that Defendant Willy made the misrepresentations and omissions detailed above. The facts show Defendant Willy solicited money from investors knowing that the purported investment program did not exist. He also knowingly told the investors the investment program would make 100% profit per month and

---

[7] The Ninth Circuit holds that "recklessness may satisfy the element of scienter in a civil action for damages under § 10(b) and Rule 10b-5." Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568-69 (9th Cir. 1990).

transferred the investors' money to several accounts controlled by him without their permission. He thus acted with scienter. Plaintiff's Motion accordingly is granted; Defendant Willy violated both the Securities Act and the Exchange Act.

## IV. THE COURT MAY ENTER JUDGMENT IN PLAINTIFF'S FAVOR

On June 28, 2002, Defendant filed a Notice of Filing of Bankruptcy Petition and of Automatic Stay. At the Court's request, Plaintiff filed a Supplemental Brief on July 1, 2002, addressing the question of whether the automatic stay imposed by 11 U.S.C. § 362(a) applies in this case. After reviewing Plaintiff's Supplemental Brief, the Court finds that Plaintiff is exempt from the automatic stay provision pursuant to 11 U.S.C. § 362(b)(4).[8]

---

[8] Section 362(b) provides:

> The filing of a petition ... does not operate as a stay -
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

(continued...)

The Ninth Circuit uses two tests to determine whether the § 362(b)(4) exemption applies: the "pecuniary purpose" test and the "public policy" test. Berg, 230 F.3d at 1167 (citing In re Universal Life Church, 128 F.3d 1294, 1297 (9th Cir. 1997). Under the "public policy" test, the Court must "distinguish[] between government actions that effectuate public policy and those that adjudicate private rights." Id. The policy behind the "police or regulatory exception" to the automatic stay is to "prevent the bankruptcy court from becoming a haven for wrongdoers." In re Berg, 230 F.3d

//

---

[8](...continued)

Section 362(a) provides:

> Except as provided in subsection (b) of this section, a petition filed ... operates as a stay, applicable to all entities, of-
>
> (1) the commencement or continuation ... of a judicial ... proceeding against the debtor that was ... commenced before the commencement of the case under this title...;
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title....

1165, 1167 (9th Cir. 2000) (citing O'Brien v. Fischel, 74 B.R. 546, 550 (D. Haw. 1987)).  Plaintiff's actions here effectuate public policy.

Where, as here, "a governmental unit is suing a debtor to prevent or stop violation of fraud, ... consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." S.E.C. v. Brennan, 230 F.3d 65, 71 (2d Cir. 2000) ("It is well established that the governmental unit exception of § 362(b)(4) permits the entry of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power."); C.F.T.G. v. CoPetro Marketing Group, Inc., 700 F.2d 1279, 1283 (9th Cir. 1983) (quoting from legislative history of the governmental unit exception to the automatic stay provision).  Defendant Willy's bankruptcy petition therefore does not stay this action.[9]

---

[9] The Court is permitted to enforce an injunction. The Court also may enter a money judgment, but it may not be enforced. CoPetro, 700 F.2d at 1283 ("Section 362(b)(5) 'extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment.'") (quoting legislative history); Brennan, 230 F.3d at 71-72 ("The collection of [a money] judgment after entry ... is not authorized....") (quoting N.L.R.B. v. 15th Ave. Iron Works, Inc., 964 F.2d 1336, 1337 (2d Cir. 1992).

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion is GRANTED.

The Court orders Plaintiff to submit a proposed final judgment consistent with this Order no later than July 22, 2002.

Dated: July 10, 2002

VIRGINIA A. PHILLIPS
United States District Judge

13